Wm. M. Young Company v. Commissioner.
Wm. M. Young Co. v. Commissioner
Docket No. 30848.
United States Tax Court
1952 Tax Ct. Memo LEXIS 112; 11 T.C.M. (CCH) 863; T.C.M. (RIA) 52250; August 14, 1952
*112 Fred L. Rosenbloom, Esq., Packard Bldg., Philadelphia, Pa., and Thomas P. Glassmoyer, Esq., for the petitioner. Max J. Hamburger, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Deficiencies have been determined in petitioner's income, declared value excessprofits and excess profits taxes for the fiscal years 1946, 1947 and 1948, as follows: Year Ended May 31
1946
1947
1948
Income tax
$ 442.56
$26,845.95
$2,529.75
Declared value
excess-profits
tax
2,048.88
Excess profits tax
2,811.25
The parties have stipulated that there is a deficiency in income tax for 1948 of $2,529.75 and it will be so shown in the Rule 50 decision to be entered herein. Some of the issues pertaining to the years 1946 and 1947 have also been settled by stipulation. The remaining issue, which is common to both of those years, is whether petitioner is entitled to treat as a part of the cost of lumber sold certain amounts which it paid out during 1946 and 1947 ostensibly as a part of the cost of lumber purchased in those years at prices above OPA ceiling prices. Some of the facts relating to that issue have likewise been *113 stipulated. The remaining facts pertaining to petitioner's operations and to the circumstances under which the payments in controversy were made are not seriously disputed. Findings of Fact The stipulated facts are found as set out in the stipulation. Petitioner is a corporation engaged in the retail lumber business at Chester, Pennsylvania. It filed its returns for the taxable years involved with the collector of internal revenue for the first district of Pennsylvania. The returns were made on an accrual basis and for a fiscal year ending May 31 in accordance with petitioner's method of bookkeeping. One of petitioner's suppliers of lumber was Gordon R. French & Son, a corporation engaged in the wholesale lumber business in Philadelphia, Pennsylvania. This company purchased a portion of its lumber from Irwin & Lyons, of North Bend, Oregon, a partnership engaged in manufacturing and processing lumber. Irwin & Lyons owned a majority of the stock of I-L Logging Co., Inc., from whom it acquired logs to be manufactured into lumber. Being unable to secure sufficient lumber at OPA ceiling prices petitioner, during 1946 and 1947, operated under an agreement with Gordon R. French *114 & Son, whereby the latter agreed to purchase for petitioner lumber which would be billed to it at ceiling prices but that for each 10,000 feet of lumber so purchased petitioner would subscribe for one share of preferred stock of I-L Logging Co., Inc., at $100 per share, and would execute three-year irrevocable options to the attorney for Irwin & Lyons to repurchase the stock at the price of $1 per share. Pursuant to this agreement deliveries of approximately 8,950,000 square feet of lumber were made to petitioner by Gordon R. French & Son in nine separate shipments over the period April 1946 to January 1947. The shipments were all billed to the petitioner by Gordon R. French & Son at OPA ceiling prices. During 1946 and 1947 petitioner subscribed for shares of I-L Logging Co., Inc., stock at $100 per share as follows: No. of Shares
Amount Paid
Date of Check
100
$10,000.00
3-13-46
150
15,000.00
4-15-46
125
12,500.00
4-22-46
50
5,000.00
5- 9-46
93
9,300.00
6- 7-46
100
10,000.00
7- 3-46
100
10,000.00
8-21-46
100
10,000.00
12-10-46
117 1/2
11,750.00
12-10-46
Total 935 1/2
$93,550.00 The last shown subscription was subsequently reduced *115 to 112 1/2 shares and $500 was refunded to petitioner. Petitioner's subscription checks were made payable to I-L Logging Co., Inc., and were deposited in that company's bank account. In its books petitioner treated the subscription payments as a stock investment. The attorney who held an option to repurchase the shares notified the petitioner on December 23, 1946, that his option had been exercised and that $930.50 had been deposited to its credit in an Oregon bank. Petitioner thereupon authorized I-L Logging Co., Inc., to transfer the shares to the escrow attorney. In its books petitioner charged the first four payments on its subscription for I-L Logging Co., Inc., stock, amounting to $42,500, to the stock investment account and in its excess profits tax return for 1946 received a tax benefit from including that amount in invested capital. Petitioner received certain rebates from I-L Logging Co., Inc., to cover shortages in lumber shipments amounting to $2,928.46 on December 23, 1946, and $670.78 on January 7, 1947. These amounts, together with the $930.50 which it received upon surrender of the stock to the escrow attorney, totalling $4,529.74, were credited in petitioner's *116 books to the stock investment account. In its 1947 income tax return petitioner reported the receipt of dividends on its I-L Logging Co., Inc., stock of $1,249.43 and claimed a loss on its investment in the stock of $37,970.26, the difference between the $42,500 investment in the stock and the $4,529.74 received from I-L Logging Co., Inc. The last five subscription payments shown above, aggregating $51,050, were charged to petitioner's lumber purchases account and the $500 refund referred to above on the last subscription was credited to that account, leaving a net amount of $50,550 which petitioner included in its 1947 return in the cost of goods sold. In determining the deficiencies herein the Commissioner disallowed the capital loss of $37,970.26 and also eliminated the $50,550 from cost of goods sold. The amounts which petitioner paid to I-L Logging Co., Inc., during 1946 and 1947 were, in fact, payments made on purchases of lumber and were not payments for stock of that company. Opinion LEMIRE, Judge: The question for determination here is a fact question, namely, whether the amounts which petitioner paid to I-L Logging Co., Inc., during 1946 and 1947 were for the *117 purchase of stock of that company, as they purported to be, or whether in reality they were for the purchase of lumber in excess of OPA ceiling prices in the guise of stock subscription payments. The evidence is clear, we think, that the payments were solely for the purchase of lumber and we have so found. It was understood between petitioner and Gordon R. French & Son that the agreement between them under which the payments in question were made was for the purpose of circumventing the OPA ceiling prices and assuring petitioner a supply of lumber. Petitioner never intended to become a bona fide stockholder of I-L Logging Co., Inc., and in fact never did so. He never received any stock certificates representing his ownership of the stock and never participated as a stockholder in the affairs of the corporation. The shares of stock were issued in petitioner's name but they were held in escrow by the attorney for I-L Logging Co., Inc., until he exercised the option to repurchase them from petitioner. The so-called dividend which he received on the stock was nothing more than a rebate on his lumber purchases. The disputed payments being in fact a part of the purchase price paid *118 for lumber, although in violation of OPA ceiling prices, they are nevertheless includable as a part of the cost of the lumber. . There have been a number of memorandum decisions following the Sullenger case, among which is Hoffman Lumber Co., Docket No. 30899, decided June 9, 1952 [, involving another retail lumber dealer in Chester, Pennsylvania. The facts there were almost identical with those in the instant case, the taxpayer having the same kind of an agreement with Gordon R. French & Son with respect to the purchase of lumber and subscriptions for the I-L Logging Co., Inc., stock. We found there, as we find in the instant case, that the amounts paid for I-L Logging Co., Inc., nominally for stock were in fact payments for lumber and as such constituted a part of the cost of goods sold. Decision will be entered under Rule 50.